IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SABI NEUPANE,

    **Plaintiff,**

  v.

    Civil Action 2:20-cv-2306

    Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

**OPINION AND ORDER**

Plaintiff, Sabi Neupane, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Supplemental Security Income benefits ("SSI"). With the consent of the parties pursuant to 28 U.S.C. § 636(c) (ECF No. 6), this matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 13) the Commissioner's Memorandum in Opposition (ECF No. 19), Plaintiff's Reply (ECF No. 20), and the administrative record (ECF No. 12). For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

This is Plaintiff's second application for Supplemental Security Income ("SSI"). Plaintiff filed her first application for SSI on February 17, 2010, alleging that she had been disabled since November 1, 2009. (R. at 58.) Administrative Law Judge ("ALJ") Claudia L. Rosen-Underwood held a hearing on March 12, 2012, at which Plaintiff, unrepresented by counsel, appeared and testified with the assistance of a Nepalese interpreter. (R. at 54.) On June 27, 2012, ALJ Rosen-Underwood issued a decision finding that Plaintiff had been under a disability within the meaning of the Social Security Act. (R. at 58.)

Plaintiff filed her current application for SSI[1] on August 2, 2016, alleging that she had been disabled since June 19, 2009.[2] (R. at 167-176.) This application was denied initially and upon reconsideration. (R. at 60-101.) Plaintiff again sought a *de novo* hearing before an administrative law judge. (R. at 112-114.) ALJ Thomas L. Wang held a hearing on March 6, 2019, at which Plaintiff, who was represented by counsel, appeared and testified, again with the assistance of an interpreter. (R. at 32-50.) On March 26, 2019, ALJ Wang issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12-31.) On March 6, 2020, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, which became the Commissioner's final decision. (R. at 1–6.) Plaintiff then timely commenced the instant action.

---

[1] Plaintiff describes her current claim as one for reinstatement of her benefits. (ECF No. 13 at 5.)
[2] "Regardless of the actual or alleged onset date of disability, an SSI claimant is not entitled to SSI benefits prior to the date the claimant files an SSI application. *See* 20 C.F.R. § 416.335." *Snead v. Saul,* No. 1:19CV2754, 2020 WL 5097580, at *11 (N.D. Ohio Aug. 10, 2020), *report and recommendation adopted*, No. 1:19CV2754, 2020 WL 5096066 (N.D. Ohio Aug. 28, 2020).

## II. HEARING TESTIMONY

### A. Plaintiff's testimony

At her first hearing on March 12, 2012, Plaintiff testified with the assistance of a Nepalese interpreter, Prem Tamang. (R. at 54.) She testified that she "apparently last worked on a farm in Bhutan in 1991" but "then spent approximately 18 years in a refugee camp in Katmandu." (R. at 56.)

At her second hearing on March 6, 2019, Plaintiff again testified with the assistance of an interpreter, Neal Pradhan. (R. at 34.) When asked by the ALJ why she could not work, Plaintiff responded that "she was sick." (R. at 37.) When asked to describe her impairments more specifically, Plaintiff testified that:

> She has a first surgery, and then after the second surgery, then after the third surgery, also. And she had a problem on the right-hand side part of it, so she's not really ready for – she doesn't feel good very much on the right part of the – right part of her body. And now she has back pain also. Okay. She does have the back pain, also, right now, and she does have a very severe headache, also. Plus, because of the headache she has a little bit of eyes problem, too, and a little bit of headaches. She has a nose problem, also. Okay. Because of that reasons she is feeling really dizzy, also. Oh. She has been – she is suffering from the dizziness. It's been about two years.

(R. at 38.) In response to questions regarding whether she was taking medication, Plaintiff stated:

> So, she cannot specifically say what is that for. Okay. She does have the medicine for the physical, as the mental. Mostly, the pain, relieve the headaches, back aches, back pains, and all those kind of stuff.

(*Id.*) Plaintiff also testified that she had no education at all and had not received any in Nepal or Bhutan. (R. at 38-39.)

---

Upon questioning by her counsel, Plaintiff responded that on a "day-to-day basis,"

> Because of the pains, and so on and so forth, back pains and headaches, and so on and so forth, she cannot perform very well. And there, as well, she has to go into the emergency, also. And that is the reason she cannot perform very well day-to-day basis.

(R. at 39.) When asked by counsel to describe how she spends her days, Plaintiff stated:

> She hasn't done anything since she's been here. She basically lays down and take a rest. And basically all of her kids brings her the food, and the meals, and everything right where she's laying down.

(*Id.*) Further, she explained that, at night she goes to bed but during the day she lays down on the couch. (*Id.*)

Plaintiff further stated that she had received benefits before but did not know why they stopped. (R. at 39-40.) In his closing statement, counsel clarified that Plaintiff had received benefits following a "Judge's decision in 2012" and that he believed her benefits had been terminated because "a family member had brought a resource into the household" making her "financially ineligible." (R. at 48-50.) When asked by counsel to explain whether her problems have gotten better over time, worse, or stayed the same, Plaintiff testified as follows:

> Since back there there's no difference whenever she has pain, and headaches, and all those kind of stuff are still the same, and where she had a kidney problem, and she has the – oh, she did the -- she had a kidney disposal, I would say. They took the kidney out. Kidney operations. And since, then, also, she had the same problem on the [INAUDIBLE], also. And there's no changes before and now.

(R. at 40.)

Plaintiff also explained that:

> whenever there's a problem she goes to the doctor, and takes the medicine and so he worked out the problem, and then it's the same thing. Meantime, when the

>medicine's been taken it solves the problem, but however, when the medicine's not there and it comes about.

(*Id.*)

Plaintiff further noted that she uses an inhaler and has a breathing problem. (R. at 40-41.) Accordingly, her counsel explained that they would allege that "the sinus problems are, perhaps, a severe impairment, but that there was no "diagnosis for COPD." (R. at 41.)

### B.     Vocational Expert Testimony

John R. Finch testified as a vocational expert ("VE") at the March 6, 2019, administrative hearing. (R. at 42-48.) The VE testified that a hypothetical individual of Plaintiff's age, education, experience, and vocational profile who retained the residual functional capacity ("RFC")[3] that ALJ Wang ultimately assessed could perform jobs such as cleaner (approximately 300,000 jobs nationally); folder (approximately 50,000 nationally); and garment sorter (approximately 60,000 jobs nationally). (R. at 43)

### III.    MEDICAL RECORDS AND OPINION

The medical records appear at pages 352 through 1067 of the Administrative Record and are discussed below as necessary.

### IV.    ADMINISTRATIVE DECISIONS

#### A.     First Administrative Decision dated June 27, 2012.

Following a hearing held on March 12, 2012, ALJ Claudia L. Rosen-Underwood issued a

---

[3] A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1).

decision on June 27, 2012. (R. at 54-59.) ALJ Rosen-Underwood found that Plaintiff had not engaged in substantial gainful activity since November 1, 2009, the alleged onset date. (R. at 56.) The ALJ found that Plaintiff had the severe impairments of status post left radical nephrectomy for renal cell cancer; polyarthropathy; and osteopenia. (*Id*.) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled on of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.) At step four of the sequential process, the ALJ stated:

> The claimant does not have the residual functional capacity to perform sustained work-related physical and mental activities in a work setting on a regular and continuing basis as defined in SSR 96-8p, at any exertional level as defined in 20 CFR 416.967 due to her chronic right-sided pain and numbness.

(*Id*.)

Further, ALJ Rosen-Underwood found that Plaintiff had no past relevant work, was a younger individual age 18-44 on the established onset date and was unable to communicate in English. (R. at 57.) Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there were no jobs that existed in significant numbers in the economy that Plaintiff could perform. (R. at 58.) Accordingly, the ALJ found that, based on her application for SSI filed on February 17, 2010, Plaintiff had been under a disability since November 1, 2009, the alleged onset date of disability. (*Id*.) The ALJ further stated, however, that "[m]edical improvement is expected with appropriate treatment" and "a continuing disability review is recommended in 12 months." (R. at 59.)

### B. Second Administrative Decision

On March 26, 2019, ALJ Wang issued his decision. (R. at 15-26.) ALJ Wang

found that Plaintiff had not engaged in substantially gainful activity since July 22, 2016, the application date. (R. at 18.) The ALJ found that Plaintiff had the severe impairments of depressive disorder, not otherwise specified, and degenerative disc disease of the lumbar spine with radiculopathy. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs. She is able to frequently balance and can occasionally stoop, kneel, crouch, or crawl. Her ability to push is limited as per the exertional weight limits of light work. She should never engage in commercial driving or be expose[d] to hazardous moving, or heavy machinery. She is limited to goal-based work that is measured by end result and not pace work. She should engage in only simple, routine tasks in a low stress environment, defined as having only occasional decision making and occasional changes in the work setting. She is further limited to only occasional interaction with coworkers, supervisors, and the general public.

(R. at 21.)

ALJ Wang specifically considered the prior ALJ decision. (R. at 17-18.) ALJ Wang noted that the current application represents a subsequent disability claim with respect to an unadjudicated period (the period extending from the date of the prior ALJ decision through the date of his decision), arising under the same titles of the Act as her prior claims. (R. at 17.) Accordingly, the ALJ acknowledged that Acquiescence Rulings 98-3(6) and 98-4(6) apply. (*Id.*) The ALJ then explained that the June 2012 decision is binding on all parties to the hearing through the date of its issuance and that, in the absence of new and material evidence or changed

circumstances, as the subsequent ALJ, he was bound by the previous ALJ's findings. However, ALJ Wang proceeded to find that there was new and material evidence such that he was not bound by the previous ALJ's findings. (R. at 18.)

In making the above determination, the ALJ afforded great weight to the opinions from the stage agency medical consultants at both the initial and reconsideration levels. (R. at 24.) Further, he gave partial weight to the opinions of the state agency psychological consultants at the initial and reconsideration levels. (*Id.*) Finally, ALJ Wang assigned partial weight to the opinion of Dr. Reece, a non-treating source who performed a one time, limited and brief examination of Plaintiff. (*Id.*)

Relying on the VE's testimony, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 25.) He therefore concluded that Plaintiff was not disabled under the Social Security Act, since July 22, 2016, the date the application was filed. (R. at 26.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff puts forth two contentions of error:

(1) The ALJ errs in rejecting a prior adjudicator's disability determination; and

(2) The ALJ's decision is not supported by substantial evidence and the Commissioner's position is not substantially justified.

**A. The Prior Disability Determination and *Drummond***

Plaintiff argues that the ALJ erred in denying her the "benefit of applying *res judicata* to her prior award." (ECF No. 20 at 1.) As the Court understands Plaintiff's argument, the source

of the ALJ's error was his failure to "review even a single medical record or other piece of substantive evidence from the period relevant to the period of disability previously adjudicated." (ECF No. 13 at 7.) Plaintiff's argument on this issue is not well-taken.

The United States Court of Appeals for the Sixth Circuit previously held that principles of *res judicata* apply to both claimants and the Commissioner in Social Security cases. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841–42 (6th Cir. 1997). The *Drummond* Court specifically held that absent evidence of "changed circumstances" relating to a claimant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ." *Id*. at 842. Applying this approach, the *Drummond* Court concluded that an ALJ was bound by a previous ALJ's determination that the claimant retained the RFC to perform sedentary work because evidence did not indicate that the claimant's condition had improved. *Id.* at 843.

Following *Drummond*, the Social Security Administration issued AR 98-4(6), which provides, in pertinent part, as follows:

> [W]hen adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998); *see also Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 425 (6th Cir. 2015) ("Read together, *Drummond* and Acquiescence Ruling 98-4(6) clearly establish that a subsequent ALJ is bound by the legal and factual findings of a prior ALJ unless the claimant presents new and material evidence that there has been either

10

a change in the law or a change in the claimant's condition.").

Thereafter, the Sixth Circuit clarified its decision in *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). The Sixth Circuit explained that principles of "consistency between proceedings and finality with respect to resolved applications" protected by *Drummond* "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id*. at 931. The Court went on to specifically reject the Social Security Administration's argument that "[i]n reviewing a second application by the same individual, . . . the administrative law judge should completely ignore earlier findings and applications" because "[f]resh review is not blind review." *Id*. at 934. In short, the Sixth Circuit therefore found that "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application" and that a "ALJ should have another opportunity to review the application under the correct standard." *Id*. at 933–34.

In Section 1-5-4-62 of the Social Security Administration's Hearings, Appeals and Litigation Law Manual (HALLEX), guidance is provided about how to implement the *Drummond* ruling. In relevant part, that guidance provides that a finding of improvement must be based on evidence that is both "new" and "material." In this context, "new" simply means evidence not presented to the prior adjudicator. "Material" evidence is evidence that "both differs from that presented in the prior claim and warrants a finding different than that made in the decision on the

11

prior claim." Additionally, the ALJ's decision "must refer to the AR [Acquiescence Ruling 98-4(6)] and include rationale indicating why any new evidence is or is not material to a particular finding." *Blaney v. Colvin*, No. 2:15-CV-2449, 2016 WL 3679983, at *5 (S.D. Ohio July 12, 2016) (citing HALLEX Section 1–5–4–62, at www.ssa.gov/OPHome/hallex/hallex/html.)

As an initial matter, *res judicata* does not apply to a new application for SSI benefits for a new period of time. *Forman v. Saul*, No. 7:19-CV-043-CHB, 2020 WL 5521038, at *5 (E.D. Ky. Sept. 14, 2020) (citing *Earley*, 893 F.3d at 933-34).   Plaintiff's most recent application dated July 22, 2016 covers a new period of time.  *See Snead v. Saul,* No. 1:19CV2754, 2020 WL 5097580, at *11 (N.D. Ohio Aug. 10, 2020), *report and recommendation adopted*, No. 1:19CV2754, 2020 WL 5096066 (N.D. Ohio Aug. 28, 2020).  ("Regardless of the actual or alleged onset date of disability, an SSI claimant is not entitled to SSI benefits prior to the date the claimant files an SSI application. *See* 20 C.F.R. § 416.335.")   To the extent Plaintiff may be arguing otherwise, such an argument simply is incorrect.

Rather, consistent with *Earley,* under the specific circumstances of this case*,* ALJ Wang was obligated only to undertake a "fresh review" and consider the prior ALJ's findings and the earlier record.  (ECF No. 20 at 3.)   Plaintiff, noting *Earley*'s caution that "[f]resh review is not blind review" argues that, because ALJ Wang "fail[ed] to consider even a single portion of the prior record, he did not even know what that record contained as no exhibit list was affixed to the prior ALJ's decision." (*Id*.)   In short, Plaintiff contends that ALJ Wang undertook a "blind review."  Plaintiff suggests that, as a result, ALJ Wang could not have "genuinely determined the presence or absence of new and material evidence." (*Id*. at 2.); (*see also* ECF No. 13 at 7

("Plaintiff would also question how the present ALJ could have genuinely or reasonably contrasted the record before him with that which was before the prior ALJ" because he "did not review even a single medical record or other piece of substantive evidence from the period relevant to the period of disability previously adjudicated"). The Court disagrees.

ALJ Wang both acknowledged and discussed the prior ALJ decision. (*see, e.g.,* R. at 17 citing R. at 51-59; R. at 18 citing R. at 56.) Further, he clearly noted his obligations in light of *Drummond, Earley* and the relevant Acquiescence Rulings. Moreover, he considered the RFC as formulated by the previous ALJ but determined that, because there was new and material evidence in the record, he would not adopt the prior RFC. (R. at 21 citing R. at 56.) Plaintiff's argument that ALJ Wang could not reasonably have determined the presence or absence of new and material evidence is not persuasive.

As the Court understands Plaintiff's argument, she is contending that, in order to determine the existence of new and material evidence, ALJ Wang was required to review the medical records relied upon by the previous ALJ. (*See* ECF No. 13 at 7 "the current ALJ did not review even a single medical record or other piece of substantive evidence from the period relevant to the period of disability previously adjudicated.) Plaintiff cites no authority in support of this argument. Further, under the specific circumstances of this case, the ALJ had sufficient information from which to find the existence of such evidence. First, ALJ Wang cited the severe impairments found by the previous ALJ, including status post radical nephrectomy for renal cell cancer; polyarthropathy; and osteopenia. (R. at 18 citing R. at 56.) Further, the previous ALJ's decision described in some detail the medical evidence of record at that time:

> The medical evidence of record showed the claimant was diagnosed with a left renal mass and underwent a left radical nephrectomy on November 4, 2009. Ex. 2F. Since then, she has had consistent treatment for complaints of abdominal pain, numbness, and right leg pain although the cancer has not recurred. Ex. 5F. She also has a history of elevated liver function tests. Ex. 6F. The State Agency denied the claimant's claim for durational reasons determining that although her condition[] was "disabling now", she was responding well to treatment, was recovering well, and that her condition was not expected to remain severe "enough" for 12 months in a row. Ex. 4A.
>
> However, the claimant has had persistent right-sided abdominal pain since her nephrectomy. Ex. 5F-6F; 10F; 20F. This pain radiates to her right leg. Ex. 20F. This has continued despite the fact that she has undergone extensive evaluations as well as a tubal ligation, which the doctors told her would not resolve the pain. Ex. 20F; 24F. In fact, the best possibility the treating physicians were able to come up with to explain her ongoing pain and numbness was a vitamin B12 deficiency or depression. The claimant was to get vitamin B12 injections, but was noncompliant and switched to pills in April 2012. Ex. 27F. MRI showed mild splenomegaly and hepatosteatosis. Ex. 10F. However, there is nothing showing recurrent cancer. She has taken pain medications, but unfortunately had adverse reactions or became intolerant. Ex. 6F.
>
> The State agency medical consultants' physical assessments are given little weight because evidence received at the hearing level shows that the claimant is more limited than determined by the State agency consultants. Ex. 2A;4A. Furthermore, the State Agency consultants did not adequately consider the combined effect of the claimant's impairments.
>
> In sum, the above residual functional capacity assessment is supported by the objective medical evidence and the claimant's testimony. None of the claimant's doctors indicated they doubted the claimant's alleged symptoms of pain and numbness. Moreover, there was nothing contradictory in the claimant's limited testimony. Although it was suggested by one of the treating physician's that depression was contributing significantly to her pain, she was not referred for mental health treatment. In short, there is nothing affirmative on which to discount her allegations.

(R. at 57.)

There is no question that the medical information relied upon by ALJ Wang post-dated the prior ALJ's decision. (*See* R. at 257-551; 555-1067.) Further, ALJ Wang's review of the

14

post-2012 records, which he cited as the basis of his decision, shows that he gave various reasons for reaching a different conclusion as to Plaintiff's physical and mental limitations in the RFC. For example, with respect to Plaintiff's physical impairments, ALJ Wang determined that Plaintiff's current medical records did not "contain substantial treatment or documentation of any of the three previously found impairments." (R. at 18; *see also* R. at 22-23.)  Specifically, ALJ Wang noted that, although Plaintiff "has a history of renal cell cancer and nephrectomy, current records do not indicate that she needed medical treatment or care related to this condition." (*Id*.) Further, he concluded that "current records do not reflect any evidence of polyarthropathy or osteopenia, and therefore, the undersigned does not find them to be severe impairments for purposes of this decision." (*Id*.)  ALJ Wang also plainly considered the new evidence pertaining to Plaintiff's mental impairments and found that Plaintiff's RFC needed to be updated accordingly to reflect limitations from a severe depressive order. (R. at 18; *see also* R. at 23-24.) Specifically, he noted, citing medical records from 2016 and 2017 that "many health care providers express[ed] concern that [Plaintiff's] depression may be having an impact on her physical health as well." (R. at 23.)

In sum, all an ALJ is required to do is consider any new evidence in a subsequent application and make his or her own determinations about a claimant's limitations. *Goins v. Saul*, No. CV 19-117-DLB, 2020 WL 1290784, at *2 (E.D. Ky. Mar. 18, 2020).  ALJ Wang did so here.  He correctly articulated the governing legal standard and stated that his decision was based on new evidence. (R. at 18.)  Further, based on this new evidence he set forth various reasons for reaching a different conclusion as to Plaintiff's physical and mental limitations in the RFC.

Further, he did so in a way that permits the Court to understand the basis for his ruling. Plaintiff's disagreement with the ultimate conclusion reached by the ALJ does not mean that the ALJ did not conduct a proper *Drummond* analysis. Accordingly, there is no merit to Plaintiff's first contention of error.

### B. Substantial evidence supports the ALJ's decision

Plaintiff also appears to contend broadly that ALJ Wang's decision is not supported by substantial evidence. This argument is neither well-articulated nor particularly well-developed and reasonably could be denied on that basis alone. "'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.'" *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995) (citation omitted)).

Moreover, it seems to hinge, in large part, on Plaintiff's unsuccessful *res judicata* argument. For example, Plaintiff asserts that, despite ALJ Wang's "implicit finding" to the contrary, current evidence supports a finding that she remains incapable of sustained work activity due to her symptoms of chronic right-sided pain and numbness. As Plaintiff explains it, her right-sided pain and numbness symptoms were the very basis for the prior ALJ's favorable decision and that it was error for ALJ Wang to disregard them in formulating an RFC different from the prior ALJ's. (ECF No. 13 at 7.) In short, she is contending that, regardless of ALJ Wang's conclusion regarding the nature of her severe impairments (and Plaintiff specifically states that she has no objection to ALJ

Wang's identification of her severe impairments, *see* ECF No. 20 at n.1), he was required, under principles of *res judicata* to incorporate these *symptoms* into her RFC. (*Id*. at 2.) Beyond this, she maintains that ALJ Wang's own discussion reveals that her current medical records continue to provide evidence of polyarthropathy. (*Id.*)

As discussed above, *res judicata* is not applicable here and ALJ Wang satisfied his obligations under *Drummond* and *Earley* by giving the evidence a fresh look. Further, as set forth below, ALJ Wang's decision is supported by substantial evidence.

ALJ Wang discussed Plaintiff's medical records in some detail, focusing specifically on treatment records from Dr. Jonesco, a physician from whom Plaintiff frequently sought treatment, and Dr. Luke who treated Plaintiff at the OSU Comprehensive Spine Center. (R. at 22-23.) The ALJ noted that, although Dr. Jonesco's records indicated that Plaintiff was seen in January 2016 and exhibited tenderness to palpitation in the bilateral thoracic paraspinals and soft tissues, Dr. Jonesco found that Plaintiff was in no acute distress and referred her to physical therapy. (R. at 22 citing R. 521-524.) The ALJ then cited Plaintiff's medical records indicating that her pain always decreased with physical therapy but that Plaintiff did not notice lasting results so that it ultimately was discontinued. (R. at 22 citing R. at 261, 275.) He also noted Plaintiff's own reports that her home exercise program helped to decrease her pain. (*Id*. citing R. at 306.) The ALJ went on to discuss later treatment records reflecting Plaintiff's good response to epidural injections and Dr. Jonesco's report upon objective examination that Plaintiff provided inconsistent effort on strength and muscle testing, he did not observe and atrophy and her straight leg raising test was negative. (*Id*. citing R. at 508, 509.)

In addressing Plaintiff's treatment records from Dr. Luke, the ALJ specifically cited Dr. Luke's comments that he did not believe Plaintiff was physically disabled. (R. at 23 citing R. at 457.)[4] Further, the ALJ noted reports that an SI joint injection had resulted in relief to the point where Plaintiff declined a repeat injection due to the improvement and that medication was helping her pain. (*Id*. citing R. at 798, 797.) Finally, the ALJ noted that, in November 2017, Plaintiff reported to Dr. Jonesco that her pain was stable on meloxicam and gabapentin and later reported in September 2018 that she takes meloxicam only occasionally when her back pain is severe. (R. at 23 citing R. at 973-974; 1024.)[5]

The ALJ concluded his discussion of these records with the following summary:

> Overall, the evidence of record regarding the claimant's physical impairments document a relatively conservative treatment course. Multiple providers have noted either inconsistent effort on muscular testing, or that the claimant suffers from diffuse deconditioning, of that she is not active because of anticipated pain (B12F/31). Consequently, the undersigned has relied greatly on the available objective evidence of record and the qualified medical opinions. The medical evidence, which is reviewed in detail above, does not support the claimant's assertions regarding the nature and severity of her subjective symptoms and functional limitations. That evidence does, however, show that the claimant pain complaints are inconsistent with the clinical and diagnostic test findings, which are minimal. To the extent that the claimant alleges functional limitations that are so severe as to preclude all sustained work activity, the undersigned does not find her self-reported symptoms and limitations supported in light of the opinions of treating and non-examining State agency physicians, the degree of medical treatment the claimant has required, and the record when considered as a whole. As such, the undersigned [h]as limited the claimant to reduced range of light work, with only occasional stooping, kneeling, crouching, and crawling. These limitations are consistent with the objective evidence of record.

(R. at 23.)

---

[4] The ALJ cites to the record at B7F/5. Dr. Luke's comments are found at B7F/1.
[5] The ALJ cites to the record at B17F. These medical records appear in the record at B19F.

Plaintiff does not dispute the ALJ's characterization of the medical information. Rather, she asserts only that other evidence in the record demonstrates continued "chronic right-sided pain and numbness" and "polyarthropathy." This is, in essence, nothing more than an invitation to the Court to reweigh the evidence, which is impermissible. *See, e.g., Paquette v. Saul*, No. 19-12006, 2020 WL 6391311, at *5 (E.D. Mich. July 29, 2020) (citing *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014)). Moreover, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*, 581 F.3d at 406.

Further, this assessment of the medical evidence supports the RFC finding. Plaintiff's objection to the RFC, at least in part, is that the ALJ failed to adopt the previous limitation relating to her chronic right-sided pain and numbness. In articulating Plaintiff's RFC, ALJ Wang, however, specifically rejected the previous finding relating to these symptoms as, again, he was free to do under the circumstances here. (R. at 21.) Plaintiff also argues, however, that ALJ Wang's RFC assessment was improper because he found Plaintiff to have a severe mental impairment – an impairment not identified by the prior ALJ. Plaintiff contends that, in light of this, ALJ Wang could not find her to be less functionally limited than the previous ALJ. Plaintiff, however, has not shown that ALJ Wang was required to find a greater degree of functional limitation or that ALJ Wang's finding was not supported by substantial evidence. *Quire v. Colvin*, No. CV 3: 15-016-DCR, 2015 WL 6871588, at *8 (E.D. Ky. Nov. 6, 2015) ("A mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the

limitations, if any, it imposes upon an individual.") (quoting *McKenzie v. Comm'r, Soc. Sec.*, 215 F.3d 1327 (Table), 2000 WL 687680, at *5 (6th Cir. May 19, 2000)).

In sum, in making the RFC assessment, ALJ Wang thoroughly considered Plaintiff's medical records, treatment history (and lack of treatment history), the opinion evidence, and Plaintiff's own testimony. (R. at 21-24.) A review of the record and ALJ Wang's decision demonstrates that his independent determination of Plaintiff's RFC and his decision not to adopt the prior ALJ's assessment is supported by substantial evidence. Accordingly, Plaintiff's second contention of error also is without merit.

### VII. CONCLUSION

In conclusion, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, Commissioner of Social Security's decision is **AFFIRMED** and Plaintiff's Statement of Errors is **OVERRULED**. The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.

**IT IS SO ORDERED.**

.

Date:   August 9, 2021                                    /s/ *Elizabeth A. Preston Deavers*
                                                         Elizabeth A. Preston Deavers
                                                         United States Magistrate Judge